**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RHONDA WILLIAMS ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  05 C 2151 |
| v. ) | |
| ILLINOIS DEPARTMENT OF ) | HONORABLE DAVID H. COAR |
| CORRECTIONS, DWAYNE CLARK, | |
| THOMAS HILLARD, and MARK DELIA, | |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rhonda Williams ("Plaintiff") has asserted claims against the Illinois Department of Corrections and individual defendants Dwayne Clark ("Clark"), Thomas Hillard ("Hillard"), and Mark Delia ("Defendant" or "Delia") for sex discrimination, retaliation, hostile work environment, and intentional infliction of emotional distress.  Before this court is Defendant Mark Delia's motion to strike and dismiss Counts II, III, and IV of the Complaint.  For the reasons set forth below, the motion to strike and dismiss is DENIED.

**I.  FACTUAL BACKGROUND**

Plaintiff, formerly a Juvenile Parole Officer, alleges that her immediate supervisor, Thomas Hillard ("Hillard"), made inappropriate and degrading gender-related comments to herself and to other female co-workers.  These comments include remarks on female agents' menstrual cycles and the size of their breasts, and a remark that a particular agent "was a good

-1-

agent for a female." Compl. ¶18. On January 7, 2003, after Hillard told Plaintiff that he would not approve her request for a schedule change because "all women were worthless," Plaintiff filed an Incident Report. Compl. ¶19. She alleges that she was subjected to various forms of retaliation after filing the report (the retaliatory acts pertinent to this motion are discussed below). At all relevant times, Defendant Delia supervised Hillard.

II.     STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed. R. Civ. P. (12)(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The Court should not dismiss a complaint "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

III.    ANALYSIS

Counts II (sex discrimination), III (hostile work environment), and IV (retaliation) are § 1983 counts against Defendants Clark, Hillard, and Delia in their individual capacities. Delia argues that Plaintiff has not alleged his personal involvement in the constitutional violations, a requirement for § 1983 claims of supervisory liability.

While a plaintiff cannot use the doctrine of respondeat superior to impose § 1983 liability on a supervisor for a subordinate's violation of the plaintiff's constitutional rights, a plaintiff can use the doctrine of supervisory liability. See Doyle v. Camelot Care Centers, 305 F.3d 603, 614-615 (7th Cir. 2002). A court will find supervisory liability if the supervisory official "had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." Id. "Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not personally involved. 'Rather, supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.'" Gossmeyer v. McDonald, 128 F.3d 481, 495 (7th Cir. 1997) (quoting Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 477 (7th Cir. 1997) (internal quotation marks omitted)); accord Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001).

Plaintiff's Complaint alleges that Delia received Plaintiff's Incident Report about Hillard's misconduct. Delia responded by commenting on who should have been the first person to receive the report and by referring the report to the Affirmative Action Office. Delia was again made aware of Hillard's misconduct when Plaintiff met with Delia on February 4, 2003 and explained her problems with Hillard. At this meeting, Plaintiff asked Delia to transfer her to another supervisor, a request that was never honored. Also at this meeting, Delia informed Plaintiff that her case load was going to be audited by someone independent of Hillard, without telling Plaintiff why she was being singled out for audit. Four days later, Plaintiff received a copy of her audit. To her dismay, it had been completed by Hillard, who concluded that Plaintiff's files were out of compliance.

These facts, which the Court accepts as true, sufficiently allege Delia's personal involvement: Delia knew about Hillard's conduct yet condoned or turned a blind eye to it by failing to transfer Plaintiff, thereby subjecting her to further abuse. Plaintiff also alleges that (a) being told she was going to be audited and (b) being audited by Hillard, contrary to Delia's assurances, were Delia's retaliatory acts for complaining about Hillard. The Complaint, then, belies Defendant's assertion that Plaintiff has made "no allegation of any specific action Defendant Delia took other than referring Plaintiff to the appropriate personnel." Def.'s Mot. to Strike and Dismiss at 6. Reading the Complaint as Defendant would have the Court to read it–that Delia merely listened to Plaintiff and took the steps that any competent administrator would take–fails to view the allegations in the light most favorable to Plaintiff.[1]

The two cases Defendant cites in support of his motion are distinguishable. In Gossmeyer v. McDonald, 128 F.3d 481 (7th Cir. 1997), the Seventh Circuit rejected an employee's claims against various high-level Illinois Department of Children and Family Services officials in their individual capacities. Because none of the officials were physically present during a warrantless search of the employee's office (and thus not "present to turn a blind eye" to the search), the court found they had no personal involvement. Id. at 495. There was no allegation in Gossmeyer, however, as there is here, that the officials knew of the alleged constitutional violation and condoned it or participated in it.

---

[1] The Court must also ignore Defendant's assertion that, when asked to transfer Plaintiff, Delia complied with a union contract by informing her that he could not make such a transfer. This "fact" is not alleged in the Complaint. See Fed. R. Civ. P. 12(b) (granting the court discretion to exclude matters outside the pleadings presented to the court in defense of a motion to dismiss).

In Connor v. Foster, 833 F. Supp. 727 (N.D. Ill. 1993), after a needle in the plaintiff's shirt pricked an arresting officer, two officers forced the plaintiff to submit to an HIV test in violation of his privacy rights. The injured officer filed an injury report. The Connor court rejected the plaintiff's claim against the director of the Cook County Department of Corrections in his individual capacity because "vague allegations" that the director should have inquired about the facts surrounding the injury report did not demonstrate direct participation in the alleged constitutional violations. Id. at 732. Unlike the plaintiff in Connor, however, Plaintiff has done more than merely allege Delia's supervisory position, or assert that Delia was "remiss in his supervisory duties" and "should have known of the . . . alleged misconduct." Id. Plaintiff has alleged that Delia *did know* of the misconduct and not only failed to transfer her, but also became directly involved by having her audited by none other than the accused.

In Gentry v. Duckworth, 65 F.3d 555 (7th Cir. 1995), a prisoner claimed that he was denied scribe materials in violation his right of access to the courts. The court ruled that the prisoner had alleged sufficient facts to hold the prison superintendent personally liable: "Gentry's pled facts [suggest that] that Duckworth knew of the denial of scribe materials, even if only by the many letters Gentry sent him. Furthermore, we can glean from Gentry's filings his argument that continued denial of scribe materials was a policy of Duckworth's, at least to the level of "turn[ing] a blind eye" and perhaps to the level of an actual policy of denial." Id. at 561 (internal citation omitted). The Gentry court read the prisoner's complaint generously because he was pro se. Id. The Complaint in the instant case does not need such a generous reading: Plaintiff clearly alleges that Delia knew of Hillard's misconduct, turned a blind eye by failing to

transfer Plaintiff, and perpetuated the abuse by advising Plaintiff of an independent audit that was ultimately completed by Hillard.

## IV. CONCLUSION

Because Plaintiff's allegations regarding Defendant Delia are sufficient to plead supervisory liability under § 1983, Delia's motion to strike and dismiss the claims against him in Counts II, III, and IV is denied.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: **March 23, 2006**